1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ANTHONY ARCEO,                        No.  2:11-cv-2396 KJN P

12          Plaintiff,

13   v.                                     ORDER AND FINDINGS AND

14   SOCORRO SALINAS, et al.,               RECOMMENDATIONS

15          Defendants.

16   I.  Introduction

17          Plaintiff is committed to a state hospital under California's Sexually Violent Predators Act

18   ("SVPA").  He is proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.

19   Plaintiff's third amended complaint is now before the court.

20   II.  Background

21          On September 9, 2011, plaintiff filed his original complaint in which he named defendants

22   at three different correctional facilities, alleging that his legal materials and personal property

23   were confiscated when he transferred from the Sierra Conservation Center to Deuel Vocational

24   Institute in December of 2010, and several incidents where he was denied access to the courts,

25   one vague retaliation claim, and a concession that he had failed to exhaust his administrative

26   remedies.  Plaintiff claimed his Eighth Amendment rights had been violated.

27   /////

28

On May 17, 2012, the complaint was dismissed with leave to amend based on plaintiff's failure to properly frame his access to the courts claims, and failure to allege any actual injury. Plaintiff then filed a 92 page amended complaint, which challenged conditions of confinement at the San Joaquin County Jail, based on broad allegations that the San Joaquin County Sheriff and several of his employees engaged in "the use of deliberate indifference in a matrix denial of access to court." (ECF No. 11 at 5.) After issues concerning plaintiff's current address were resolved, plaintiff's amended complaint was dismissed as vague and conclusory, and plaintiff was granted leave to file a second amended complaint that did not exceed 15 pages in length. (ECF No. 18 at 6.)

After receiving extensions of time, plaintiff filed his second amended complaint, alleging that defendants retaliated against plaintiff based on the exercise of his free speech rights by, *inter alia*, denying grievances, as well as denying his mother visitation, and challenging the constitutionality of the jail's administrative grievance procedure. (ECF No. 21.) Shortly thereafter, a third amended complaint was filed by plaintiff's mother, allegedly on his behalf, and then a fourth amended complaint was again filed by his mother. On March 16, 2015, the third and fourth amended complaints were stricken, and plaintiff's second amended complaint was screened and dismissed, and plaintiff was granted one final opportunity to file a third amended complaint. (ECF No. 24 at 10.)

III.  Third Amended Complaint

On May 20, 2015, plaintiff filed a 115 page document, including a 22 page third amended complaint ("TAC"), and 93 pages of exhibits, alleging First and Fourteenth Amendment violations by multiple defendants at the San Joaquin County Jail, including the sheriff. (ECF No. 27.) Plaintiff claims that when he was transferred to the San Joaquin County Jail on December 21, 2010, while he was in administrative segregation ("ad seg"), until January 7, 2014, defendants denied his right to file grievance forms, conspired to chill his First Amendment rights by denying forms to file "regulatory, statutory, and constitutional claims of injustices" by "denying, preventing, dissuading, and suppressing all exhaustion of plaintiff's claims." (ECF No. 27 at 6-7.) Plaintiff alleges such actions were not related to any legitimate goal of the correctional

1   system.  (ECF No. 27 at 6-7.)  Plaintiff complains that he was denied access to a physical law

2   library, legal materials, forms, and grievance forms.  Plaintiff also includes a laundry list of

3   unrelated incidents throughout his three year housing in the San Joaquin County Jail, including

4   allegations that he was denied hair clippers, was unable to sharpen pencils, and was not allowed

5   to receive internet-generated mail; defendant Adams kicked plaintiff's legal mail; plaintiff's

6   phone was cut off for no reason; and he was denied an attorney visit and a visit with his mother.

7          Plaintiff asserts that defendants violated plaintiff's right to equal protection and his due

8   process rights, his access to the courts/right to petition the government in violation of the First

9   Amendment, and retaliated against plaintiff for exercising his right to file grievances; defendants

10  Moule, Simmons, Orin, Cholula, Stone and Goulard failed to "properly train and prevent any of

11  the complained of acts" (ECF No. 27 at 18), and defendant Moore violated plaintiff's First

12  Amendment rights and failed to properly train his employees.  (ECF No. 27 at 19-20.)

13  IV.  Screening

14         As plaintiff was previously advised, the court is required to screen the TAC.  28 U.S.C.

15  § 1915A.  The court must identify cognizable claims or dismiss the complaint, or any portion of

16  the complaint, if the complaint "is frivolous, malicious, or fails to state a claim upon which relief

17  may be granted," or "seeks monetary relief from a defendant who is immune from such relief."

18  Id. § 1915A(b).

19         A complaint must contain "a short and plain statement of the claim showing that the

20  pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required,

21  but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

22  statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic

23  Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

24         To avoid dismissal for failure to state a claim a complaint must contain more than "naked

25  assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of

26  action."  Twombly, 550 U.S. at 555-557.  In other words, "[t]hreadbare recitals of the elements of

27  a cause of action, supported by mere conclusory statements do not suffice."  Iqbal, 556 U.S. at

28  678.

1      Furthermore, a claim upon which the court can grant relief must have facial plausibility.

2   Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual

3   content that allows the court to draw the reasonable inference that the defendant is liable for the

4   misconduct alleged."  Iqbal, 556 U.S. at 678.  When considering whether a complaint states a

5   claim upon which relief can be granted, the court must accept the allegations as true, Erickson v.

6   Pardus, 551 U.S. 89 (2007), and construe the complaint in the light most favorable to the plaintiff,

7   see Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Harlow v.

8   Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727 (1982).

9   V.  Standards - Civil Detainee

10     The Fourteenth Amendment provides the standard for evaluating the constitutionally

11  protected interests of individuals who have been involuntarily committed to a state facility.  See

12  Youngberg v. Romeo, 457 U.S. 307, 312 (1982) (civilly committed persons)); Hydrick v. Hunter,

13  500 F.3d 978, 994 (9th Cir. 2007) (SVPA detainees), vacated on other grounds by Hunter v.

14  Hydrick, 129 S. Ct. 2431 (2009) (mem.); Jones v. Blanas, 393 F.3d 918, 931-32 (9th Cir. 2004)

15  (SVPA detainees awaiting adjudication).  In determining whether the constitutional rights of an

16  involuntarily committed individual have been violated, the court must balance the individual's

17  liberty interests against the relevant state interests with deference shown to the judgment

18  exercised by qualified professionals.  Id. at 321-22.  Plaintiff's First Amendment claim is rightly

19  analyzed under prisoner rights case law.  See Rivera v. Rogers, 224 F. App'x 148, 150 (3d Cir.

20  2007) ("Given that Rivera has been convicted of a crime and is being detained in the Special

21  Treatment Unit because of his classification as a sexually violent predator under New Jersey's

22  Sexually Violent Predator Act, his status is similar to that of a prisoner and we agree with the

23  District Court's decision to proceed with its analysis of his First Amendment claim by looking to

24  case law interpreting a prisoner's rights.").

25     A.  Equal Protection Claim

26     In paragraph 116 of the TAC, plaintiff claims some of the defendants violated plaintiff's

27  rights by "ensuring similar[ly] situated persons are treated alike[,] guarantee[d] to the plaintiff by

28  the 14th Amendment."  (ECF No. 27 at 20.)

"The Equal Protection Clause requires the State to treat all similarly situated people equally." Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008) (citation omitted). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

Here, plaintiff fails to state an equal protection claim. First, he has not alleged facts showing that he is a member of a protected class. Second, even if he had alleged such facts, he has not alleged facts showing that he was discriminated against because of his membership in that class. Third, he has alleged no facts showing a discriminatory intent. Thus, any equal protection claim is dismissed for failure to state a claim.

B. Fourteenth Amendment Due Process Claim

As plaintiff was previously informed, his claims that defendants failed to provide grievance forms, did not respond to a grievance, or did not properly respond to, or process, a grievance, fail to state a due process claim under the Fourteenth Amendment as a matter of law.

There is no constitutional right to a grievance system. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Nash v. Lucas, 2015 WL 3649303 (W.D. Wash. June 11, 2015). Even if the facility elects to provide a grievance mechanism, alleged violations of the procedures do not give rise to § 1983 claims because inmates do not have a protected liberty interest in jail or prison grievance procedures. Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996) (jail); see also Mann, 855 F.2d at 640 (prison); Allen v. Wood, 970 F.Supp. 824, 832 (E.D. Wash. 1997) (grievance process is an internal prison process for handling prison complaints and does not involve substantive rights). Due process does not require that each level of review personally investigate the allegations made, or that reviewing officials address the grievances in a particular manner. Rather, due process is satisfied where the grievant is provided the opportunity to present his grievances to the appropriate official. See Johnson v. Rocha, 128 F. App'x 586, 587-88 (9th Cir. 2005), citing Madrid v. Gomez, 190 F.3d 990, 995 (9th Cir. 1999) (the Constitution provides prisoners only the ability to

5

present their grievances to the courts.)  The Ninth Circuit treats the right to file a prison grievance as a constitutionally protected First Amendment right.  Brodheim v. Cry, 484 F.3d 1262, 1269 (9th Cir. 2009)

Thus, plaintiff's claims that defendants refused to process his grievances or failed to address such grievances in a particular way, fail to state a Fourteenth Amendment due process claim.  Because plaintiff's right to file grievances at the jail is protected under the First Amendment, plaintiff's claims concerning denial of grievance forms is discussed below.  Plaintiff's Fourteenth Amendment due process claims concerning grievances should be dismissed for failure to state a claim.  Allowing plaintiff to amend such claims would be futile.

C.  First Amendment - Access to the Courts/Right to Petition Government

In the court's first screening order, plaintiff was advised that to state a cognizable access to the courts claim, he must identify an actual injury.  (ECF No. 7 at 4-5.)  Subsequent screening orders also provided the governing legal standards.  (ECF Nos. 18, 24.)  Here, plaintiff does not include a separate access to the courts cause of action (ECF No. 19-21), but included allegations that he was denied access to the courts.  (ECF No. 27 at 17.)  Moreover, plaintiff asserts that defendants Moore, Moule, Simmons, Orin, Cholula, Goulard, Adams, Surjick, Kong, Jones, Ravetti, McHugh, Sing, Torres, Savage, Castlenon, and John Doe violated plaintiff's First Amendment right to petition the government.  (ECF No. 27 at 19-20.)  Plaintiff contends that defendants denied him "new forms to file regulatory, statutory and constitutional claims of injustices by Sheriff in denying, preventing, dissuading and suppressing all exhaustion of plaintiff's claims while he was housed in ad seg."  (ECF No. 27 at 4.)

The First Amendment right to petition the government includes a right of access to the courts.  See Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972).  Prisoners have a constitutional right of access to the courts.  Bounds v. Smith, 430 U.S. 817, 828 (1977).  Prisoners also have a right "to litigate claims challenging their sentences or the conditions of their confinement to conclusion without active interference by prison officials."  Silva v. Di Vittorio, 658 F.3d 1090, 1103 (9th Cir. 2011), abrogated on other grounds as recognized in Richey v. Dahne, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015).  An inmate alleging a violation of this right must

6

show that he suffered an actual injury. Lewis v. Casey, 518 U.S. 343, 349-51 (1996). That is, plaintiff must allege that the deprivation actually injured his litigation efforts, in that the defendant hindered his efforts to bring, or caused him to lose, an actionable claim challenging his criminal sentence or conditions of confinement. See id. at 351; Christopher v. Harbury, 536 U.S. 403, 412-15 (2002). The right is limited to the filing of direct criminal appeals, habeas petitions, and civil rights actions. Lewis, 518 U.S. at 354-55. Inmates do not have "an abstract, freestanding right to a law library or legal assistance," and "cannot establish relevant actual injury simply by establishing that [the] prison's law library or legal assistance program is subpar in some theoretical sense." Id. at 351. Because actual injury is a jurisdictional requirement that may not be waived, an actual injury must be alleged in order to state a claim for relief. Nevada Dept. of Corr. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011), cert. denied, 132 S. Ct. 1823 (2012); see, e.g., Jenkins v. McMickens, 618 F.Supp. 1472, 1474-75 (S.D. N.Y. 1985) (complaint alleging certain documents pertaining to pending trial confiscated and not returned too conclusory to support claim of denial of access to court).

Here, the only "actual injury" plaintiff asserts is that he was denied his "California Supreme Court review" due to his inability to get the rules of court. (ECF No. 27 at 17.) Plaintiff claims he then filed a petition for writ of habeas corpus in the Court of Appeals for the Third Circuit in Case No. C075821. (ECF No. 27 at 17.) Plaintiff does not identify which defendant allegedly denied him the rules of court, or when the alleged denial occurred.

Moreover, earlier in the TAC, plaintiff notes that he was convicted and sentenced to 31 years in state prison in SC055592A, his trial was in 1994, and he was to parole on October 15, 2010. (ECF No. 27 at 6.) Plaintiff alleges that he "litigated 46 issues all the way to the United States Supreme Court claiming actual innocence." (ECF No. 27 at 7, citing Arceo v. Carey, 546 U.S. 1186 (2006).) Plaintiff claims that he is seeking an evidentiary hearing "for that case appears to have relied on fraudulent medical reports by evaluators at his probable cause hearing," but does not identify the case. (ECF No. 27 at 7.) Also, plaintiff claims that his objections concerning facts learned in late 2012 are presently pending before an unidentified court. (Id.)
////

1    Public court records reflect that plaintiff filed a petition for review in the California

2  Supreme Court on March 2, 1998, in Case No. S068291, which was denied on April 15, 1998.

3  His petition for writ of certiorari in the United States Supreme Court was denied on February 21,

4  2006.  Arceo, 546 U.S. at 1186.  Both cases were closed following issuance of their denials.

5  Thus, filings in connection with plaintiff's underlying conviction and direct appeal took place

6  long before he was housed at the San Joaquin County Jail, and no motions are presently pending

7  therein.  Plaintiff's federal habeas petition collaterally challenging his 1994 conviction was

8  denied on March 13, 2002.  Arceo v. Carey, Case No. 2:99-cv-1024 FCD DAD (E.D. Cal.).

9    In addition, plaintiff filed a petition for writ of habeas corpus in the California Supreme

10  Court on November 30, 1998, in Case No. S075021, which was disposed of on April 28, 1999.

11  He filed a second petition for writ of habeas corpus in the California Supreme Court on April 28,

12  2014, in Case No. S218272, which was disposed of on July 9, 2014.  No other documents were

13  filed by him in the California Supreme Court.  He filed three petitions for writ of habeas corpus in

14  the Court of Appeal:  Case No. C028423 on January 9, 1998 (summarily denied by order); Case

15  No. C075633 on January 27, 2014 (summarily denied by order); and Case No. C075821 on

16  February 20, 2014 (same); and a petition for writ of mandate/ prohibition on August 22, 2013 in

17  Case No. C074519, which was also summarily denied by order.  None of these cases were

18  pending while plaintiff was housed in the San Joaquin County Jail, and none are presently

19  pending.

20    The court takes judicial notice of these public records.[1]

21    Here, plaintiff fails to allege facts demonstrating that he suffered an actual injury as a

22  result of defendants' actions at the jail.  Indeed, plaintiff did not identify the legal claim he

23  allegedly sought to bring in the California Supreme Court.  Plaintiff did not identify the state

---

[1]  The court may take judicial notice of facts that are "not subject to reasonable dispute because it
. . . can be accurately and readily determined from sources whose accuracy cannot reasonably be
questioned," Fed. R. Evid. 201(b), including undisputed information posted on official websites.
Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 999 (9th Cir. 2010).  It is appropriate to take
judicial notice of the docket sheet of a California court.  White v. Martel, 601 F.3d 882, 885 (9th
Cir.), cert. denied, 131 S. Ct. 332 (2010).  The address of the official website of the California
state courts is www.courts.ca.gov.

8

1  court case he wished to appeal to the California Supreme Court by filing the petition for review,

2  or explain how the lack of the rules of court prevented him from filing his petition for review.

3  Because his petition for review on his underlying conviction was addressed long before he

4  brought this action, his claim that he was unable to file a "petition for review," without more, fails

5  to demonstrate that he sustained an actual injury.  Plaintiff cannot make conclusory declarations

6  of injury, but instead must demonstrate that a non-frivolous legal claim has been frustrated or

7  impeded.  Lewis, 518 U.S. at 351.  Moreover, if plaintiff opted to pursue such claim in Case No.

8  C075821, he did not describe the claims he raised so the court could determine whether he was

9  pursuing a non-frivolous claim concerning his conviction or conditions of confinement.[2]  Thus,

10  plaintiff has again failed to allege a specific injury resulting from his alleged impeded access to

11  the court while he was housed at the San Joaquin County Jail, despite being granted multiple

12  opportunities to do so.[3]

13        Because plaintiff has again failed to sufficiently plead facts demonstrating an actual injury

14  sustained in violation of the First Amendment, plaintiff's third amended complaint fails to state a

15  cognizable claim.  Plaintiff has been granted multiple opportunities to demonstrate that he

16  sustained an actual injury.  (ECF Nos. 7 at 4-5; 18 at 4.)  Because it appears that plaintiff is

17  unable to assert facts demonstrating an actual injury, the dismissal of this First Amendment claim

18  should be without leave to amend.

19  ////

20  ////

21

22  [2]  In addition, the Seventh Circuit and several Ninth Circuit district courts have held that until an
inmate's conviction or sentence has been overturned, he cannot bring claims for damages for

23  denial of access to legal materials or legal assistance to aid him in challenging some aspect of his

24  conviction or sentence.  See Koch v. Jester, 2014 WL 3783961 at *5 (D. Or. 2014) (collecting
cases that hold that the favorable termination rule of Heck v. Humphrey, 512 U.S. 477, 489

25  (1994), bars such access to courts claims).

26  [3] Court records also reflect that plaintiff filed the following three actions in this court while he
was housed at the San Joaquin County Jail:  (1) Arceo v. Smith, Case No. 2:10-cv-0538 KJN,

27  filed March 5, 2010 (then transferred to Fresno Division, Case No. 1:10-cv-0427 GSA); (2) Arceo
v. State of California, Case No. 1:10-cv-2275 AWI GBC, filed December 8, 2010; and (3) Arceo

28  v. Salinas, Case No. 2:11-cv-2396 KJN, filed September 9, 2011.

D. Retaliation

Plaintiff alleges defendants retaliated against plaintiff for filing grievances.  (ECF No. 27 at 18.)

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so."  Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citation omitted); Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).  To state a viable First Amendment retaliation claim, a prisoner must allege five elements:  "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  Conduct protected by the First Amendment includes communications that are "part of the grievance process."  Brodheim, 584 F.3d at 1271 n.4.  A plaintiff must specifically identify the protected conduct at issue, name the defendant who took adverse action against him, and plead that the allegedly adverse action[4] was taken "because of" plaintiff's protected conduct.[5]

The Ninth Circuit has found that preserving institutional order, discipline and security are legitimate penological goals which, if they provide the motivation for an official act taken, will defeat a claim of retaliation.  Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985) ("Challenges to restrictions of first amendment rights must be analyzed in terms of the legitimate policies and goals of the correctional institution in the preservation of internal order and discipline, maintenance of institutional security, and

---

[4]  For purposes of evaluating a retaliation claim, an adverse action is action that "could chill a person of ordinary firmness from continuing to engage in the protected activity[ ]."  Pinard v. Clatskanie School Dist. 6J, 467 F.3d 755, 770 (9th Cir. 2006).  See also White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000).

[5]  Prisoners have a constitutional right to file prison grievances and pursue civil rights litigation in the courts.  See Rhodes v. Robinson, 408 F.3d at 567.  Prison officials may not retaliate against prisoners for exercising these rights.  Id. at 568; see also Hines v. Gomez, 108 F.3d 265, 267 (9th Cir. 1997); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995), overruled on other grounds by Shaw v. Murphy, 532 U.S. 223, 230 n.2 (2001).

1    rehabilitation of prisoners.").  Thus, the burden is on plaintiff to allege and demonstrate that

2    legitimate correctional purposes did not motivate the actions by prison officials about which he

3    complains.  See Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) (prisoner "must show that

4    there were no legitimate correctional purposes motivating the actions he complains of.").  District

5    courts must "afford appropriate deference and flexibility" to prison officials in the evaluation of

6    proffered legitimate penological reasons for conduct alleged to be retaliatory."  Pratt, 65 F.3d at

7    807 (citing Sandin v. Conner, 515 U.S. 472 (1995)).

8        Federal courts were not created to supervise correctional facilities, but to enforce the

9    constitutional rights of all persons, including inmates.  "We are not unmindful that prison officials

10   must be accorded latitude in the administration of prison affairs, and that prisoners necessarily are

11   subject to appropriate rules and regulations."  Cruz v. Beto, 405 U.S. 319, 321 (1982).  But

12   prisoners, like other individuals, have the right to petition the government for redress of

13   grievances, which includes the First Amendment right to file grievances against jail officials and

14   to be free from retaliation for doing so.  Brodheim, 584 F.3d at 1269.  "Of fundamental import to

15   prisoners are their First Amendment 'rights to file prison grievances. . . .'"  Rhodes v. Robinson,

16   408 F.3d at 567 (quoting Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003)).  "[B]ecause purely

17   retaliatory actions taken against a prisoner for having exercised those rights necessarily

18   undermine those protections, such actions violate the Constitution quite apart from any

19   underlying misconduct they are designed to shield."  Rhodes v. Robinson, 408 F.3d at 567.

20       On the other hand, not every incident rises to the level of retaliation.  In Rhodes v.

21   Robinson, the Ninth Circuit cited a list of cases involving incidents that did rise to the level of

22   retaliation:

23           Gomez v. Vernon, 255 F.3d 1118, 1127 (9th Cir. 2001) (holding
             that "repeated threats of transfer because of [the plaintiff's]
24           complaints about the administration of the [prison] library" were
             sufficient to ground a retaliation claim); Hines, 108 F.3d at 269
25           (holding that the retaliatory imposition of a ten-day period of
             confinement and loss of television -- justified by a correctional
26           officer's false allegation that the plaintiff breached prison
             regulations -- violated the First Amendment); Pratt, 65 F.3d at 807
27           ("[I]t would be illegal for [corrections] officials to transfer and
             double-cell [plaintiff] solely in retaliation for his exercise of
28           protected First Amendment rights."); Valandingham v. Bojorquez,

                                          11

866 F.2d 1135, 1138 (9th Cir. 1989) (holding that, if correctional officers indeed called plaintiff a "snitch" in front of other prisoners in retaliation for his filing grievances, it would violate the First Amendment).

Rhodes v. Robinson, 408 F.3d at 568.

In the TAC, plaintiff recounts numerous incidents as to various defendants, but fails to specifically address how he contends the facts apply to each element of a retaliation claim.  Thus, the court will review plaintiff's allegations to determine whether he states a cognizable retaliation claim as to each incident, and will then address whether plaintiff has stated a claim based on a chronology of events.

### 1.  August 24, 2011

Plaintiff claims that on May 30, 2011, he filed a grievance concerning his pre-existing issues, including a 30 day supply of Benadryl that was taken upon his arrival at the jail, chronos for lower tier/bed due to lack of left arm prosthesis, water-bag to exercise and prevent atrophy, and lower back arthritis.  (ECF No. 27 at 9; 41-43.)  Plaintiff claims that there were no bars for the disadvantaged, and stated that "the orthopedic specialist never opined medical chrono no longer necessary."  (ECF No. 27 at 9.)  On August 24, 2011, plaintiff alleges that defendant Orin, a Sheriff's Sergeant, came to plaintiff and said, "Lt. Simmons, as of right now medical is not authorizing your chrono," and "if [you're] found with one [you'll] be punished."  (ECF No. 27 at 9.)  Orin also told plaintiff "to start the grievance over with one issue."  (Id.)

Plaintiff alleges no facts demonstrating that the denial of his medical chrono was based on plaintiff's conduct protected under the First Amendment.  While his allegations are not entirely clear, it appears that defendant Orin was simply relaying information to plaintiff.  In any event, plaintiff's grievance was processed through the third level of review, where it was referred "to S/C for evaluation."  (ECF No. 27 at 41-4.)  The grievances and responses do not reflect involvement by defendant Orin, and the issue of medical chronos is decided by medical professionals, not correctional sergeants.  Thus, defendant Orin was not responsible for the adverse action of failure to provide medical chronos.  Plaintiff's allegations fail to state a claim against defendant Orin based on the events of August 24, 2011.

2. October 21 & 26, 2011

On October 21, 2011, plaintiff alleges that defendant Orin came to plaintiff's cell about his grievance concerning sleep medication and saw plaintiff had filled his pillowcase with books and papers to exercise his arm.  Plaintiff claims that "this was in direct response from [his] grievance [he] filed and was told if [he's] found with a therapy bag [he'd] be punished."  (ECF No. 27 at 9.)  That evening, plaintiff alleges that defendants Adams and Kong "bypassed many cells" to search plaintiff's cell.  Plaintiff claims he was written up for destruction of property and possession of contraband.  When the officers saw the sharpened pencils, plaintiff readily admitted opening his razor to sharpen them.

Then, on October 26, 2011, defendant Cholula found plaintiff guilty of sharpening pencils instead of destruction of property charges, and then imposed full restriction, which plaintiff argues was a "direct result from Sgt. Orin's grievance investigation."  (ECF No. 27 at 9.) Plaintiff told defendant Cholula she could not take his visits, and plaintiff alleges that Cholula became irate, made plaintiff read part of a form that states inmates may not grieve court decisions or inmate disciplinary actions.  (ECF No. 27 at 9-10.)  Plaintiff told Cholula that he could appeal anything and would; plaintiff contends that she responded by becoming angry, and "arrogantly reminding [him] of her position and authority."  (ECF No. 27 at 10.)  Plaintiff then showed her a prison regulation, and "she flared over [his] insolence and how [he] must read it in context."  (Id.) On November 6, 2011, plaintiff filed a grievance on defendant Cholula citing "her decisions do not control the compulsory process body of laws only the reverse."  (Id.)

It is well-settled that prisoners have no Constitutional right of privacy in their cells.  See, e.g., Hudson v. Palmer, 468 U.S. 517, 525-28 (1984) ("A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order.").

Although plaintiff contends that the guilty finding was a "direct result" of defendant Orin's grievance investigation, Orin was legitimately in plaintiff's cell to investigate an unrelated grievance.  Because of what Orin observed while he was in plaintiff's cell, defendants Adams and Kong proceeded to plaintiff's cell to search in response thereto.  Plaintiff concedes that he had

been sharpening pencils in his cell, a violation of jail rules.  Plaintiff fails to address how the rule prohibiting the sharpening of pencils in inmate's cells is not a legitimate penological goal. Because such actions reasonably advanced a legitimate penological goal, plaintiff fails to state a retaliation claim against defendants Orin, Adams, Kong and Cholula, based on the October 21 and 26, 2011 incidents.

### 3. November 16, 2011

On November 16, 2011, plaintiff contends that defendant Cholula denied visitation to his mother from November 15 to 24, 2011, yet allowed Rocio Garibay to visit plaintiff.  (ECF No. 27 at 10.)  Plaintiff also claims that his mother reported defendant Torres to Sgt. Cholula on November 16, 2011, perhaps suggesting that Torres had something to do with the denial of his mother's visit.  (Id.)  However, as the court previously found,

> plaintiff's mother's visits were suspended for ten days in 2011 because jail personnel complained that while she was in the in the visiting lobby, plaintiff's mother was soliciting visitors to join the mother's support group, despite prior requests that the mother stop such solicitations.  (ECF Nos. 21 at 48; 23 at 29.)

(ECF No. 24 at 8.)  Plaintiff provided a copy of this letter with his TAC.  (ECF No. 27 at 60.) Such suspension served a legitimate correctional purpose, which plaintiff fails to address in his TAC.  Accordingly, plaintiff fails to state a retaliation claim against defendants Cholula and Torres based on this incident.

### 4. January 24, 2012

On January 24, 2012, plaintiff claims that defendant Adams kicked plaintiff's legal work under his cell door.  The undersigned previously found that defendant Adams' act of kicking plaintiff's legal work, while unprofessional, does not rise to the level of an adverse action.  (ECF No. 24 at 10.)  Although defendant Adams confiscated blank paper, envelopes, and rubber-bands, plaintiff received the legal mail and was able to file a grievance concerning Adams' actions.[6] The confiscation of these materials was pursuant to jail rules prohibiting the mailing of such items

---

[6]  Within this claim, plaintiff alleges that defendant Stone attempted to cover up defendant Adams' denial of plaintiff's grievance by "scribbling over original statement."  (ECF No. 27 at 11, citing ECF No. 27 at 68.)  However, this allegation, without more, fails to state a cognizable claim for retaliation.

1   to inmates, a legitimate security concern.  Plaintiff raises no new allegations changing the court's

2   prior analysis that he fails to state a cognizable retaliation claim against defendant Adams based

3   on this incident.

4                  5.   February of 2012

5          Plaintiff alleges that on February 5, 2012, defendant Surjick, a Correctional officer,

6   refused to file plaintiff's second level grievance, disagreeing with its contents, and asked plaintiff

7   to remove Surjick from the grievance.  (ECF No. 27 at 11; 75.)  On February 18, 2012, plaintiff

8   filed a grievance against Surjick for his actions on February 5, 2012.  (ECF No. 27 at 75.)

9          On February 9, 2012, plaintiff alleges that defendant Kong was working with defendant

10   Adams.  Adams handed plaintiff a response to his grievance.  Kong passed by, and plaintiff asked

11   him for a grievance form and rule book.  Kong asked what for, and plaintiff explained that he was

12   dissatisfied.  Kong allegedly read Adams' name aloud, and then "scans who filed it as if to

13   retaliate."  (ECF No. 27 at 12.)  Kong then told plaintiff that Kong would speak with Adams.

14   Plaintiff watched Kong and Adams speak, but Adams never provided plaintiff with a grievance

15   form.  (ECF No. 27 at 12.)

16          On February 10, 2012, plaintiff alleges that defendant McHugh asked plaintiff why he

17   wanted a grievance form.  (ECF No. 27 at 12.)  After plaintiff tried to explain, plaintiff alleges

18   defendant McHugh "made bold and brash remarks about Adams."  (Id.)  Plaintiff asked her to

19   leave, and McHugh allegedly verbally defended Adams.  After she left, plaintiff watched her

20   speak with Adams, but plaintiff was not provided with a grievance form.

21          On February 18, 2012, plaintiff filed a grievance on defendant Kong because on February

22   9, 2012, defendant Kong refused to provide a grievance form.  (ECF No. 27 at 12, 78.)  Plaintiff

23   alleges that Kong told plaintiff he would talk to Adams.  (ECF No. 27 at 12.)  Plaintiff asked if

24   Kong was refusing him a grievance, and Kong responded that he would send Adams up.  Plaintiff

25   told Kong that he did not need Adams.  Plaintiff was not provided a grievance form.  Plaintiff

26   states that on March 5, 2012, "[h]e also recited who filed it as if to retaliate against him."  (ECF

27   No. 27 at 12.)  However, plaintiff does not identify who plaintiff is referring to.

28   ////

Plaintiff cites to his grievance forms.  (ECF No. 27 at 75-80.)  However, the grievance forms confirm that plaintiff filed his grievances against Surjick and Kong through the third level of review.  (ECF No. 27 at 77, 80.)  At the third level, plaintiff's grievances were forwarded to Lt. Teague on March 5, 2012.  (Id.)

An inmate's right to meaningful access to the courts extends to established grievance procedures.  Bradley, 64 F.3d at 1279.  However, as set forth above, inmates have no constitutional right to a specific grievance procedure.  Ramirez v. Galaza, 334 F.3d at 860, citing Mann, 855 F.2d at 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure.").  Nevertheless, once prison authorities establish a grievance procedure, inmates may not be retaliated against for using an available appeal procedure or for the content of their grievances.  Bruce, 351 F.3d at 1288; Bradley, 64 F.3d at 1281.  Such retaliation creates a "chilling effect" on First Amendment rights.  Bruce, 351 F.3d at 1288 (citing Hines, 108 F.3d at 269).  Fear of punishment or discipline should not dissuade a prisoner from filing a grievance, as such a constraint violates the First Amendment right of access to the courts.  Bradley, 64 F.3d at 1279.

The incidents alleged reflect that defendants Surjick, Kong, Adams and McHugh were allegedly attempting to interfere with plaintiff's right to use the existing grievance system in retaliation for plaintiff's exercise of his constitutional right to pursue his grievance.  Timing can provide circumstantial evidence of retaliatory intent.  Pratt, 65 F.3d at 808.  Plaintiff had filed a grievance, and requested another grievance form so that he could appeal the grievance to the next level.  Defendant Surjick read the grievance and allegedly attempted to persuade plaintiff to remove Surjick's name.  Defendants Kong and McHugh allegedly attempted to find out the nature of plaintiff's grievance, and both met with Adams, apparently discussing the grievance, yet none of them provided a grievance form to plaintiff.  There appears no legitimate correctional purpose for denying plaintiff a grievance form to pursue his grievance to the next level of review.  Therefore, plaintiff states potentially cognizable retaliation claims against defendants Surjick, Kong, Adams and McHugh for their actions in February of 2012.

////

6. March or April 2012

Plaintiff alleges that on April 3, 2012, defendant Ravetti said that she "remembers [an] E-Mail somewhere" denying plaintiff's "visitors were Sylvia Arceo and Angela Filer." (ECF No. 27 at 10.)  Plaintiff alleges that defendant Ravetti allowed plaintiff's sister to visit, but not his mother, telling her she must speak to Sgt. Cholula and Internal Affairs first. (Id.)  Plaintiff refers to his mother's declaration, which avers that she was denied a visit on March 4, 2012, by defendant Ravetti "as she (Ravetti) remembers an email somewhere." (ECF No. 27 at 85.)

Plaintiff fails to show that defendant Ravetti denied plaintiff's mother's visit because of plaintiff's exercise of his First Amendment rights and that the denial did not reasonably advance a legitimate correctional goal.  Accordingly, plaintiff fails to state a cognizable claim for retaliation.

7. September 2012

Plaintiff alleges that on September 11, 2012, he asked defendant Savage the name of his partner because they were allegedly allowing gang members to pass out plaintiff's mail to him with his information. (ECF No. 27 at 13.)  Plaintiff alleges that Savage replied, "he would not help [plaintiff] with [his] lawsuit," then turned, facing everyone, and walked down the stairs yelling, "you fucken child molester." (ECF No. 27 at 13.)  Plaintiff contends Savage's remark was made to incite violence against plaintiff for filing the instant complaint. (Id.)  In support, plaintiff cites inmate Villanueva's declaration, his mother's September 17, 2012 letter to Captain Moule, and plaintiff's declaration. (ECF No. 27 at 88-89; 93-95.)

On September 17, 2012, plaintiff claims he was refused all grievance forms, so he had his family fax the captain. (ECF No. 27 at 13.)  Plaintiff provides a copy of his mother's September 17, 2012 letter to Captain Moule. (ECF no. 27 at 89-90.)  Plaintiff wanted to file both a citizen's complaint and a grievance, but defendant Simmons told plaintiff that defendant Captain Moule said plaintiff had to file one or the other. (ECF No. 27 at 13.)  Plaintiff chose to file a citizen's complaint. (ECF No. 27 at 92-95.)

On September 26, 2012, plaintiff was seen by defendant Simmons concerning the porters passing out Special Needs Yard ("SNY") mail where a click on the internet would allegedly divulge plaintiff's criminal history, and defendant Savage's "threats" calling plaintiff a "fucken

17

1   child molester," and that plaintiff was told he could not file both a citizen's complaint and a

2   grievance. (ECF No. 27 at 13.) On September 27, 2012, plaintiff was again seen by defendant

3   Simmons, and they discussed grievances, citizen's complaints, and plaintiff's claim that he was

4   deprived of visits and food as punishment. (ECF No. 27 at 14.) Plaintiff claims that when he told

5   Simmons that his officers deny, dissuade, and refuse to give or file grievance forms, Simmons

6   "giggle[d]." (ECF No. 27 at 14.)

7        Inmates may not be retaliated against for using an available appeal procedure or for the

8   content of their grievances because such retaliation creates a "chilling effect" on First

9   Amendment rights. Bruce, 351 F.3d at 1288.

10       Plaintiff's allegation as to defendant Savage states a potentially cognizable retaliation

11  claim because plaintiff alleges that defendant Savage intentionally called plaintiff an

12  inflammatory label to incite violence against plaintiff because plaintiff filed the instant complaint.

13  On the other hand, plaintiff's allegations against defendants Moule and Simmons fail to state

14  cognizable claims for retaliation because he fails to allege facts demonstrating that their

15  motivation in requiring plaintiff to choose between forms was retaliatory in nature. Moreover,

16  plaintiff fails to demonstrate how his subsequent discussions with defendant Simmons in

17  September of 2012 resulted in any adverse action based on plaintiff's conduct protected under the

18  First Amendment.

19                    8. November 9, 2012

20       Plaintiff's allegations concerning defendant Castlenon are unclear. In his pleading, he

21  states that on November 9, 2012, defendant Castlenon stated "what did you say about my wife

22  inciting violence knowing the general population would retaliate against plaintiff" and later

23  "purposely releasing [plaintiff] with other inmates" and "while under escort popped open another

24  inmates door" against policy. (ECF No. 27 at 15.) Plaintiff refers to a November 9, 2012 memo

25  to the sheriff. (Id.) Although the memo is "from" Sylvia Arceo, plaintiff, Arceo Family and the

26  public, the memo is signed by plaintiff's mother, Sylvia Arceo. (ECF No. 27 at 102-03.) The

27  memo recounts plaintiff's allegations as to Castlenon, but claims Castlenon said, "what did you

28  say about my wife?" (ECF No. 27 at 102.) The memo describes Castlenon's statement as

1  "clearly odious," but includes no allegations that Castlenon's actions were based on plaintiff's

2  protected conduct.  (Id.)

3      Plaintiff's allegations, even with the assistance of the memo, do not connect defendant

4  Castlenon's comments or actions with plaintiff's protected conduct.  Plaintiff does not identify

5  who is Castlenon's wife, or how Castlenon's actions were retaliatory in nature.  Therefore,

6  plaintiff fails to state a cognizable retaliation claim against defendant Castlenon.

7           9.  December 19, 2012

8      Plaintiff alleges that on December 19, 2012, defendant Simmons came to plaintiff's cell to

9  discuss his grievance concerning cheaper prices.  (ECF No. 27 at 13.)  Plaintiff alleges that he

10  tried to tell defendant Simmons that his officers were not filing plaintiff's grievance forms.  (Id.)

11  Such allegations fail to state a cognizable retaliation claim against defendant Simmons.

12          10.  September 20, 2013

13      In paragraph 82, plaintiff recounts a verbal exchange between him and defendant Garcia

14  on September 20, 2013, concerning plaintiff's request not to have his property destroyed while

15  plaintiff is on the yard.  Plaintiff identifies no adverse action.  To the extent plaintiff contends that

16  defendant Garcia's statement that if plaintiff "fucked with him, he's going to fuck with

17  [plaintiff]," constitutes a threat, allegations of mere threats are not cognizable.  See Gaut v. Sunn,

18  810 F.2d 923, 925 (9th Cir. 1987) (mere threat does not constitute constitutional wrong, nor do

19  allegations that naked threat was for purpose of denying access to courts compel contrary result).

20  Accordingly, plaintiff fails to state a cognizable claim for retaliation against defendant Garcia.

21          11.  December 8, 2013

22      In paragraph 73, plaintiff states that plaintiff spoke to classification and was then

23  transferred to "the other side."  (ECF No. 27 at 14.)  Plaintiff refers to a memo from defendant

24  Sgt. Goulard, faxed to the District Attorney on December 8, 2013, explaining that the San Joaquin

25  County Sheriff's Department "could not house plaintiff any longer at [the] jail due to his safety

26  and security while under escort or behind lock[ed] doors and was transferred."  (ECF No. 27 at

27  14, citing ECF No. 27 at 111.)  Plaintiff claims that on December 9, 2013, defendant Goulard

28  testified that there was a problem at the jail, that plaintiff complained about his safety, and was

1   transferred.  (ECF No. 27 at 16.)

2   Plaintiff cites no other allegations as to defendant Goulard.  Defendant Goulard's memo

3   sought plaintiff's housing in a state facility based on Goulard's concern that plaintiff's presence

4   in the jail might result in the release of a more dangerous inmate, posing a risk to the community.

5   (ECF No. 27 at 111.)  Plaintiff alleges no facts demonstrating that defendant Goulard took this

6   action in retaliation for plaintiff's conduct under the First Amendment.  Plaintiff does not indicate

7   what was said to "classification," and does not explain the ramifications, if any, to his transfer to

8   "the other side."  Absent factual allegations not present here, plaintiff fails to state a cognizable

9   retaliation claim against defendant Goulard.

10              12.  Denial of Grievance Forms

11   Plaintiff alleges that he was denied grievance forms on several occasions.  (ECF No. 27 at

12   ¶¶ 38, 53, 57, 60, 64, 65, 69, 85.)  Plaintiff must plead facts which suggest that retaliation for the

13   exercise of protected conduct was the "substantial" or "motivating" factor behind each

14   defendant's conduct.  See Soranno's Gasco, Inc., 874 F.2d at 1314.  Plaintiff must also plead facts

15   which suggest an absence of legitimate correctional goals for the conduct he contends was

16   retaliatory.  Pratt, 65 F.3d at 806.

17   Plaintiff's claims that he was denied grievance forms in February of 2012 are belied by his

18   exhibits.  The grievance forms confirm that plaintiff filed his grievances against defendants

19   Surjick and Kong through the third level of review.  (ECF No. 27 at 77, 80.)  Moreover, in the

20   TAC, plaintiff recounts numerous grievances he filed (¶¶ 24, 26, 29, 31, 33, 35, 39, 42, 46, 54,

21   58, 64), and he provided copies of 21 grievances he filed at the San Joaquin County Jail.  (ECF

22   No. 27 at 35, 37-39, 41-42, 46, 50, 52, 66-69, 75-82.)  With the exception of the incidents that

23   occurred in February of 2012, plaintiff failed to allege facts suggesting that the denial of the

24   grievance form was based on plaintiff's conduct protected by the First Amendment.  Thus, except

25   for the incidents occurring in February of 2012, discussed above, plaintiff's allegations as to the

26   denial of grievance forms, without more, fail to state a First Amendment claim.

27   ////

28   ////

20

1          13.  <u>Conclusion</u>

2          Accordingly, plaintiff states potentially cognizable retaliation claims against defendants

3   Surjick, Kong, Adams and McHugh for their actions in February of 2012, and defendant Savage

4   based on his actions in September of 2012.  As to the remaining defendants, except defendant

5   Moore, plaintiff fails to state cognizable claims for retaliation.  Moreover, plaintiff fails to allege

6   a chronology of events that plausibly supports a claim that any remaining defendant acted with a

7   retaliatory motive in response to plaintiff's protected conduct.  Rather, plaintiff cites multiple,

8   unrelated incidents spanning a period over three years, by different defendants, most of which

9   reflect no retaliatory motive.  Plaintiff has been given multiple opportunities to amend his

10  pleading to allege facts demonstrating cognizable claims for retaliation.  (ECF Nos. 7 at 5; 18 at

11  4-5; 24 at 9-10.)  Thus, it appears that plaintiff cannot allege additional facts demonstrating

12  cognizable claims for retaliation, and should not be granted leave to further amend his pleading.

13          E.  <u>Defendant Sheriff Moore</u>

14          In his pleading, plaintiff recounts numerous occasions where various officers allegedly

15  refused to provide plaintiff with a grievance form.  Plaintiff alleges that the sheriff, defendant

16  Moore, maintains an "underground rules and system" that "prevents a more concrete connection,

17  standards and protocol in receiving and processing grievances," and does nothing to correct or

18  prevent a culture of "deny, dissuade, and suppress grievance forms."  (ECF No. 27 at 17.)

19  Plaintiff alleges that defendant Moore, as sheriff, has the ability to exhaust administrative

20  remedies, yet fails to do so unless there are many witnesses to an incident which requires

21  exhaustion.  (<u>Id.</u>)  Plaintiff contends that defendant Moore "deliberately and collectively denies

22  the appeal process."  (<u>Id.</u>)  Finally, plaintiff alleges that defendant Moore is responsible for

23  training (ECF No. 27 at 5), and fails to properly train jail staff in the process of administrative

24  exhaustion (ECF No. 27 at 17).

25          On September 3, 2013, plaintiff wrote defendant Sheriff Moore concerning plaintiff's

26  failed efforts to exhaust his administrative appeals and the alleged retaliation he suffered in

27  response to such efforts.  (ECF No. 27 at 106-08.)  Plaintiff also provided two letters from his

28  mother addressed to Sheriff Moore advising the sheriff about plaintiff's concerns.  (ECF No. 27 at

99-101 (October 5, 2012); 102-03 (November 9, 2012).)  Plaintiff also wrote the district attorney

on September 3, 2013, and on November 4, 2013, wrote the grand jury, about the alleged

retaliation and chilling of his First Amendment rights.  (ECF No. 27 at 104-05, 109-10.)

### 1. No Respondeat Superior Liability

Supervisory personnel are generally not liable under § 1983 for the actions of their

employees under a theory of respondeat superior.  Monell v. Dep't. of Soc. Servs., 436 U.S. 658,

691 (1978).  Therefore, when a named defendant holds a supervisory position, the causal link

between him and the claimed constitutional violation must be specifically alleged.  See Fayle v.

Stapley, 607 F.2d 858, 862 (9th Cir. 1979).  In other words, "[u]nder § 1983 a supervisor is only

liable for his own acts.  Where the constitutional violations were largely committed by

subordinates the supervisor is liable only if he participated in or directed the violations."

Humphries v. County of Los Angeles, 554 F.3d 1170, 1202 (9th Cir. 2009), overruled on other

grounds by Los Angeles Cnty. v. Humphries, 131 S. Ct. 447 (2010).  Nonetheless, because a

supervisory official may be liable on the basis of his own acts or omissions, a plaintiff may

sufficiently state a claim against a supervisor for deliberate indifference based upon the

supervisor's knowledge of and acquiescence in the unconstitutional conduct by his subordinates.

Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011).  Thus, the supervisor is liable either if he

personally involved in the unconstitutional deprivation by acting in a manner that was

deliberately indifferent or there was a sufficient causal connection between his wrongful conduct

and the deprivation.  Id. at 1206-07.

Here, plaintiff alleges no facts connecting defendant Moore to the alleged incidents, other

than to repeat the sentence, "the Sheriff chose to suppress the legal right to file than use the viable

mechanism in place" (ECF No. 27 at 8), or some variation thereof.  (ECF No. 27 at ¶¶ 25, 28, 30,

32, 34, 36, 40, 47, 59, 65, 75, 79, 86.)  Such generic allegations fail to provide specific facts as to

the sheriff's involvement in each incident.  As plaintiff was informed in the court's prior

screening orders, a supervisor may be found liable under Section 1983 only if he personally

participated in the challenged conduct or knew about, but failed to prevent, the challenged

conduct.  Notifying defendant Moore by letter or otherwise after the alleged act has been

1    committed is insufficient to demonstrate a causal connection or to show that Moore was aware of

2    the incidents.  In addition, plaintiff includes no allegations demonstrating that defendant Moore

3    retaliated against plaintiff based on his conduct protected under the First Amendment.

4                    2. Municipal Liability Based on Alleged Underground Policy

5           Plaintiff does not name San Joaquin County as a defendant; however, his claim against

6    defendant Sheriff Moore arising from conditions of confinement at the jail is equivalent to a suit

7    against the County.  See Gomez v. Vernon, 255 F.3d at 1126; see also Cortez v. County of Los

8    Angeles, 294 F.3d 1186, 1189-91 (9th Cir. 2002) (holding that the Los Angeles County Sheriff

9    acts on behalf of the county in his role as administrator of the county jail).  Municipalities and

10   other local-government units are considered "persons" under § 1983 and therefore may be liable

11   for causing a constitutional deprivation.  Monell, 436 U.S. at 690-01; Long v. Co. of L.A., 442

12   F.3d 1178, 1185 (9th Cir. 2006).  Because no respondeat superior liability exists under § 1983, a

13   municipality is liable only for injuries that arise from an official policy or longstanding custom.

14   Monell, 436 U.S. at 694; City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989).  A plaintiff

15   must allege "that a [county] employee committed the alleged constitutional violation pursuant to a

16   formal governmental policy or a longstanding practice or custom which constitutes the standard

17   operating procedure of the local governmental entity."  Gillette v. Delmore, 979 F.2d 1342, 1346

18   (9th Cir. 1992) (internal quotation marks omitted).  In addition, a plaintiff must allege facts

19   demonstrating that the policy was "(1) the cause in fact and (2) the proximate cause of the

20   constitutional deprivation."  Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996).  "Liability for

21   improper custom may not be predicated on isolated or sporadic incidents; it must be founded

22   upon practices of sufficient duration, frequency and consistency that the conduct has become a

23   traditional method of carrying out policy."  Id.; Thompson v. Los Angeles, 885 F.2d 1439, 1443-

24   44 (9th Cir. 1989) ("Consistent with the commonly understood meaning of custom, proof of

25   random acts or isolated events are [sic] insufficient to establish custom."), overruled on other

26   grounds by Bull v. City & Co. of S.F., 595 F.3d 964, 981 (9th Cir. 2010) (en banc).

27          A plaintiff may also establish municipal liability by demonstrating that the alleged

28   constitutional violation was caused by a failure to train municipal employees adequately.  See

Harris, 489 U.S. at 388.  A plaintiff claiming failure to train must allege facts demonstrating the following:  (1) he was deprived of a constitutional right; (2) the municipality had a training policy that "amounts to deliberate indifference to the constitutional rights of the persons with whom [its police officers] are likely to come into contact"; and (3) his constitutional injury would have been avoided had the municipality properly trained those officers.  Blankenhorn v. City of Orange, 485 F.3d 463, 484 (9th Cir. 2007) (internal quotation marks omitted, alteration in original).

Here, plaintiff claims that defendant Moore maintained an "underground" policy to deny, dissuade, and suppress the filing of grievances at the jail.  Plaintiff provided a copy of the policy governing the filing of grievances at the jail:

> While in the San Joaquin County Custody Facility you have the right to file a grievance relating to any conditions of confinement, including but not limited to medical care, classification actions, procedures, food, clothing and bedding.
>
> First, speak to your Housing Unit Officer.  They may have a solution to your problem.  If this doesn't solve your problem, you may file a formal grievance.  A complete set of instructions for the entire grievance process is found on the Inmate Grievance Form.  You may not grieve decisions handed down by the courts or disciplinary actions.  (See Appeal above).[7]  You have 15 days from the time of the initial complaint to file a grievance.

(ECF No. 27 at 55-56.)

As set forth above, plaintiff alleges no facts demonstrating the sheriff's personal involvement in any of the alleged violations of plaintiff's First Amendment rights.  Plaintiff's use of the generic allegation that the sheriff chose to suppress inmates' legal right to file grievances, referenced above, is similarly insufficient to demonstrate liability under Monell.  See Iqbal, 556 U.S. at 678 (complaint insufficient "if it tenders naked assertions devoid of further factual enhancement" (alteration and internal quotation marks omitted)); Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011) (finding that plaintiff's "Monell and supervisory liability

---

[7]  Inmates are allowed to appeal disciplinary sanctions, but such requests for an appeal must be submitted on the bottom of the inmate's Goldenrod copy of the Minutes of Discipline Board Form only.  (ECF No. 27 at 55.)  "Requests submitted in any other form will not be accepted."  (Id.)  In other words, inmates are not allowed to use grievance forms to appeal a disciplinary, but are required to use the Minutes of the Discipline Board form.  (Id.)

1   claims lack any factual allegations that would separate them from the 'formulaic recitation of a

2   cause of action's elements' deemed insufficient by Twombly" ).  Plaintiff's September 3, 2013

3   letter, and his mother's February and September, 2012 letters to the sheriff did not put the sheriff

4   on notice of the alleged violations because the alleged violations in February and November of

5   2012 preceded such letters.  Because the alleged violations occurred before defendant Moore was

6   notified, he could not take steps to prevent them.  Plaintiff fails to allege facts demonstrating that

7   defendant Moore was aware of the alleged First Amendment violations yet failed to prevent them.

8   Finally, the written policy governing the filing of grievances is not deficient; rather, it confirms

9   the inmate's right to file a grievance, and provides information as to the grievance process.

10        Here, plaintiff concedes that he was at a disadvantage when he arrived at the jail because

11   he had been housed in state prison for many years, and it took him months to figure out how to

12   exhaust a grievance at the jail.  (ECF No. 27 at 7.)  It appears that plaintiff was used to the

13   grievance process implemented by the California Department of Corrections and Rehabilitation

14   ("CDCR"), based on his citations to title 15 state prison regulations, and CDCR forms, as well as

15   the length of time he was housed in state prison.  Despite plaintiff's claims that he was frequently

16   refused grievance forms, the record reflects that he filed at least 21 grievances while housed at the

17   jail.  (ECF No. 27 at 35, 37-39, 41-42, 46, 50, 52, 66-69, 75-82.)  Indeed, even in February 2012,

18   when he alleges defendants Kong, Adams and McHugh denied him grievance forms, plaintiff

19   obtained grievance forms and appealed his grievances through the third level of review.  (ECF

20   No. 27 at 77, 80.)  Plaintiff asserts that the jail's policy to "ask the sheriff officer first" encourages

21   sheriff's officers to talk the inmate out of the form completely or to "divert culpability."  (ECF

22   No. 27 at 17.)  However the policy provided by plaintiff explains that speaking to the housing

23   officer first may enable the officer to solve the inmate's problem.  Such requirement does not

24   render the policy constitutionally deficient.

25        Upon review of the TAC, plaintiff fails to demonstrate that defendant Moore has adopted

26   a policy or custom of depriving inmates grievance forms or access to the grievance process.

27   Rather, plaintiff demonstrates that on isolated occasions, for various reasons and over a period of

28   years, plaintiff alone has been denied grievance forms.  Indeed, out of all the incidents addressed

above, only the incidents in February of 2012 related to plaintiff's alleged inability to obtain a grievance form to file his appeal, and he was able to obtain forms to grieve the officers' actions in February.  Plaintiff fails to allege facts demonstrating that the jail consistently employed the alleged wrongful practices such that the conduct has become a traditional method of carrying out an alleged underground policy.  Thus, even if plaintiff's mother's letter to the sheriff after the February, 2012 incidents was sufficient to make defendant Moore aware of defendants' wrongful action yet Moore failed to take any remedial steps, defendants' alleged wrongful actions in February fail to demonstrate such an underground custom or practice exists.  Furthermore, plaintiff's claim that defendant Moore failed to train his employees fails because it is unsupported by any facts showing the inadequacy of the jail's training program or how that caused any of the alleged constitutional deprivations.

### 3.  Denial of Attorney Visit

Finally, in paragraph 52, plaintiff claims that the sheriff "chose to deny [plaintiff's] right for [an] attorney visit."  (ECF No. 27 at 10.)  Such an allegation is too vague to state a claim.  Moreover, plaintiff's inability to visit with an attorney on one occasion, without more, does not rise to the level of a constitutional violation.

### F.  Conspiracy to Retaliate

Plaintiff appears to allege that defendants engaged in a conspiracy to retaliate against him by denying him various grievance forms and refusing to process grievances.

A conspiracy claim brought under § 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'"  Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)).  "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'"  Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

////

The federal system is one of notice pleading, and the court may not apply a heightened pleading standard to plaintiff's allegations of conspiracy.  <u>Empress LLC v. City and County of San Francisco</u>, 419 F.3d 1052, 1056 (9th Cir. 2005).  However, although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ."  <u>Twombly</u>, 550 U.S. at 555.  A plaintiff must set forth "the grounds of his entitlement to relief[,]" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. . . ." <u>Id.</u> (internal quotations and citations omitted); <u>see</u> <u>Iqbal</u>, 129 S. Ct. at 1949.  As such, a bare allegation that defendants conspired to violate plaintiff's constitutional rights will not suffice to give rise to a conspiracy claim under § 1983.

Here, plaintiff fails to allege any plausible facts supporting the existence of a conspiracy among all of the defendants.  Rather, plaintiff provides a laundry list of alleged violations, the majority of which pertain to unrelated subject matters by various defendants with different job descriptions.  Plaintiff's conclusory allegations that defendants conspired to retaliate against him and to thwart his litigation efforts are insufficient.

G.  <u>Failure to Train</u>

In addition to the failure to train allegation against defendant Moore, discussed above, plaintiff alleges that "at no time" did defendants "Moule, Simmons, Orin, Cholula, Stone and Goulard properly train and prevent any of the complained of acts."  (ECF No. 27 at 18.) However, these defendants hold various positions, from Captain, Lieutenant, to Sheriff's Sergeant.  Plaintiff included no allegations as to each of these defendants' roles in training, and his allegation is unsupported by any facts showing the inadequacy of the training program or how that caused any of the alleged constitutional deprivations.  Plaintiff's general allegation as to an alleged failure to train fails to state cognizable failure to train claims against defendants Moule, Simmons, Orin, Cholula, Stone and Goulard.

H.  <u>Leave to Amend</u>

The court must determine whether to allow plaintiff to further amend.

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely grant

leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  When determining whether to grant

leave to amend, courts weigh certain factors:  "undue delay, bad faith or dilatory motive on the

part of [the party who wishes to amend a pleading], repeated failure to cure deficiencies by

amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of

the amendment, [and] futility of amendment[.]"  See Foman v. Davis, 371 U.S. 178, 182 (1962).

Although prejudice to the opposing party "carries the greatest weight[,] . . . a strong showing of

any of the remaining Foman factors" can justify the denial of leave to amend.  See Eminence

Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam).  Furthermore,

analysis of these factors can overlap.  For instance, a party's "repeated failure to cure

deficiencies" constitutes "a strong indication that the [party] has no additional facts to plead" and

"that any attempt to amend would be futile[.]"  See Zucco Partners, LLC v. Digimarc Corp., 552

F.3d 981, 988, 1007 (9th Cir. 2009) (internal quotation marks omitted) (upholding dismissal of

complaint with prejudice when there were "three iterations of [the] allegations -- none of which,

according to [the district] court, was sufficient to survive a motion to dismiss"); see also Simon v.

Value Behavioral Health, Inc., 208 F.3d 1073, 1084 (9th Cir. 2000) (affirming dismissal without

leave to amend where plaintiff failed to correct deficiencies in complaint, where court had

afforded plaintiff opportunities to do so, and had discussed with plaintiff the substantive problems

with his claims), amended by 234 F.3d 428, overruled on other grounds by Odom v. Microsoft

Corp., 486 F.3d 541, 551 (9th Cir. 2007); Plumeau v. Sch. Dist. # 40 Cnty. of Yamhill, 130 F.3d

432, 439 (9th Cir. 1997) (denial of leave to amend appropriate where further amendment would

be futile).

      Here, plaintiff has filed three prior pleadings (ECF Nos. 1, 11, 21), none of which alleged

sufficient facts to state a claim.  (See, e.g., Orders, ECF Nos. 7, 18, 24.)  Moreover, plaintiff

continually failed to correct the pleading deficiencies.  As to plaintiff's First Amendment claims,

plaintiff was provided detailed information on the pleading requirements, yet failed to provide the

requisite factual allegations, in some instances relying on allegations that the court previously

found failed to state a claim.  Therefore, because there is a strong showing on at least two, if not

three of the Foman factors, that plaintiff should not be granted leave to further file an amended

1  pleading, the court recommends dismissal of plaintiff's remaining claims and defendants without

2  prejudice, but without leave to amend.[8]

3      I. Conclusion

4      As set forth above, the allegations in the TAC are sufficient at least to state potentially

5  cognizable claims for retaliation against defendants Surjick, Kong, Adams, and McHugh for their

6  actions in February of 2012; and defendant Savage based on his actions in September of 2012.

7  See 28 U.S.C. § 1915A.  Plaintiff fails to state cognizable civil rights claims as to the remaining

8  defendants.

9      Accordingly, IT IS HEREBY ORDERED that:

10      1. The Clerk of the Court is directed to assign a district judge to this case; and

11      2.  The allegations in the pleading are sufficient at least to state potentially cognizable

12  claims against defendants Surjick, Kong, Adams, McHugh, and Savage.  See 28 U.S.C. § 1915A.

13  With this order the Clerk of the Court shall provide to plaintiff a blank summons, a copy of the

14  pleading filed May 20, 2015 (ECF No. 27), five USM-285 forms and instructions for service of

15  process on defendants Surjick, Kong, Adams, McHugh, and Savage.  Within thirty days of

16  service of this order plaintiff may return the attached Notice of Submission of Documents with

17  the completed summons, the completed USM-285 forms, and six copies of the endorsed third

18  amended complaint filed May 20, 2015.  The court will transmit them to the United States

19  Marshal for service of process pursuant to Fed. R. Civ. P. 4.  Defendants Surjick, Kong, Adams,

20  McHugh, and Savage will be required to respond to plaintiff's allegations within the deadlines

21  stated in Fed. R. Civ. P. 12(a)(1).

22      3.  Failure to comply with this order will result in a recommendation that this action be

23  dismissed.

24      IT IS HEREBY RECOMMENDED that plaintiff's claims against the remaining

25  defendants be dismissed without prejudice.

26

27  [8]  At least one other district court has denied leave to amend when an amended complaint's
    factual allegations were identical to averments that had been previously dismissed.  See Johnson

28  v. Wash. Mut., 2010 WL 1797250, at *1-2 (E.D. Cal. May 4, 2010).

1        These findings and recommendations are submitted to the United States District Judge

2    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

3    after being served with these findings and recommendations, plaintiff may file written objections

4    with the court and serve a copy on all parties.  Such a document should be captioned

5    "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that

6    failure to file objections within the specified time may waive the right to appeal the District

7    Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

8    Dated:  March 17, 2016

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/arce2396.scr2

1

2

3

4

5

6

7                             UNITED STATES DISTRICT COURT

8                        FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   ANTHONY ARCEO,                              No.  2:11-cv-2396 KJN P

11              Plaintiff,

12        v.                                     NOTICE OF SUBMISSION OF
                                                 DOCUMENTS
13   SOCORRO SALINAS, et al.,

14              Defendants.

15

16        Plaintiff submits the following documents in compliance with the court's order filed

17   _____.

18        _____     completed summons form

19        _____     completed forms USM-285

20        _____     copies of the   _____

21                                          Third Amended Complaint

22

23   DATED:

24                                          _____

25                                          Plaintiff

26

27

28
                                            1