1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ANTHONY ARCEO,                          No.  2:11-cv-2396 MCE KJN P

12                 Plaintiff,

13        v.                                 ORDER AND FINDINGS AND
                                             RECOMMENDATIONS
14   SOCORRO SALINAS, et al.,

15                 Defendants.

16

17   I.  Introduction

18        Plaintiff is a former county jail inmate, proceeding without counsel.  This action proceeds

19   on plaintiff's retaliation claims against defendants Surjick, Kong, Adams and McHugh for their

20   actions in February of 2012, and defendant Savage based on his actions in September of 2012.[1]

21   Defendants' motion for summary judgment and plaintiff's motion for handwriting expert are

22   before the court.  As set forth more fully below, the undersigned finds that defendants' motion for

23   summary judgment should be granted in part and denied in part, and plaintiff's motion is denied.

24   _____

25   [1]  Plaintiff's remaining claims, including all other claims against the remaining defendants, were
     dismissed by the district court on May 5, 2016.  (ECF No. 31; see also ECF No. 44.)  Thus, on
26   December 1, 2016, paragraphs 5-6, 10-12, 16-20, 22-53, 62-67, 69, 71-73, 75-84, 86-96, 100 and
     103 were stricken from plaintiff's third amended complaint.  (ECF No. 45 at 2.)  The court noted
27   that paragraphs 97-99 contained legal arguments concerning the alleged retaliation by these
     remaining defendants, which the court did not strike, but defendants were not required to address
28   paragraphs 97-99 in their responsive pleading.  (ECF No. 45 at 2.)

II. Plaintiff's Claims

This action proceeds on plaintiff's third amended complaint, filed May 20, 2015. In an appended declaration, plaintiff states he was housed at the San Joaquin County Jail "as a parolee on a civil hold." (ECF No. 27 at 93.)

A. February of 2012

Plaintiff alleges that on February 5, 2012, defendant Surjick, a Correctional officer, refused to file plaintiff's second level grievance, disagreeing with its contents, and asked plaintiff to remove Surjick from the grievance. (ECF No. 27 at 11; 75.) On February 18, 2012, plaintiff filed a grievance against Surjick for his actions on February 5, 2012. (ECF No. 27 at 75.)

On February 9, 2012, plaintiff alleges that defendant Kong was working with defendant Adams. Adams handed plaintiff a response to his grievance. Kong passed by, and plaintiff asked him for a grievance form and rule book. Kong asked what for, and plaintiff explained that he was dissatisfied. Kong allegedly read Adams' name aloud, and then "scans who filed it as if to retaliate." (ECF No. 27 at 12.) Kong then told plaintiff that Kong would speak with Adams. Plaintiff watched Kong and Adams speak, but Adams never provided plaintiff with a grievance form. (ECF No. 27 at 12.)

On February 10, 2012, plaintiff alleges that defendant McHugh asked plaintiff why he wanted a grievance form. (ECF No. 27 at 12.) After plaintiff tried to explain, plaintiff alleges defendant McHugh "made bold and brash remarks about Adams." (Id.) Plaintiff asked her to leave, and McHugh allegedly verbally defended Adams. After she left, plaintiff watched her speak with Adams, but plaintiff was not provided with a grievance form.

On February 18, 2012, plaintiff filed a grievance on defendant Kong because on February 9, 2012, defendant Kong refused to provide a grievance form. (ECF No. 27 at 12, 78.) Plaintiff alleges that Kong told plaintiff he would talk to Adams. (ECF No. 27 at 12.) Plaintiff asked if Kong was refusing him a grievance, and Kong responded that he would send Adams up. Plaintiff told Kong that he did not need Adams. Plaintiff was not provided a grievance form.[2]

---

[2] Plaintiff also cited his grievance forms. (ECF No. 27 at 75-80.) However, the grievance forms confirm that plaintiff filed his grievances against Surjick and Kong through the third level of

B. September 2012

Plaintiff alleges that on September 11, 2012, he asked defendant Savage the name of his partner because they were allegedly allowing gang members to pass out plaintiff's mail to him with his information. (ECF No. 27 at 13.) Plaintiff alleges that Savage replied, "he would not help [plaintiff] with [his] lawsuit," then turned, facing everyone, and walked down the stairs yelling, "you fucken child molester." (ECF No. 27 at 13.) Plaintiff contends Savage's remark was made to incite violence against plaintiff for "filing this complaint." (Id.) In support, plaintiff cites inmate Johnny Ray Villanueva's declaration, his mother's September 17, 2012 letter to Captain Moule referencing the incident, and plaintiff's declaration. (ECF No. 27 at 88-89; 93-95.)

III. Defer Summary Judgment?

In his opposition, plaintiff claims that "defendants have failed to provide all discovery." (ECF No. 76 at 9; 22.) Plaintiff contends that defendants failed to produce all original statements made by defendants, or the "amount of grievances filed for any single year [versus] those abandoned." (ECF No. 76 at 22-23.) Plaintiff argues that discovery should be compelled and summary judgment denied. (ECF No. 76 at 23.) In his accompanying declaration, he declares he was not provided all discovery, and that he is "working from memory as he no longer has each defendant's original statements, but Deputy Adams," because the Department of State Hospitals at Coalinga ("DSH-C") confiscated all of his electronic devices containing "all of plaintiff's legal work and exhibits." (ECF No. 76 at 28.)

Federal Rule of Civil Procedure 56(d) permits a party opposing a motion for summary judgment to request an order deferring the time to respond to the motion and permitting that party to conduct additional discovery upon an adequate factual showing. Rule 56(d) provides that the party must "show[ ] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). "A party requesting a continuance pursuant to [Rule 56(d)] must identify by affidavit the specific facts that further discovery would

_____

review. (ECF No. 27 at 77, 80.) At the third level, plaintiff's grievances were forwarded to Lt. Teague on March 5, 2012. (Id.)

reveal, and explain why those facts would preclude summary judgment." <u>Tatum v. City & Cty. of San Francisco</u>, 441 F.3d 1090, 1100 (9th Cir. 2006) (citations omitted).

First, discovery closed on September 25, 2017. In his prior motion to compel, plaintiff appended certain discovery requests he propounded to defendants, but without defendants' written responses, and plaintiff did not seek further discovery responses from defendants. (ECF No. 63; 63 at 29-58, 86-96.) Rather, he sought responses to discovery improperly propounded to nonparties, and sought discovery as to unrelated claims. (ECF No. 63; 66 at 5, 7.) The court declined to grant defendants' request to dismiss the case as a sanction. (ECF No. 66 at 7.)

In his reply to defendants' opposition to the motion to compel, plaintiff asked the court to grant discovery of "interrogatories, admissions and production of documents that [are] material and relevant concerning trustworthiness, impeachment, and or may include bias and motive" from defendants Savage, Surjick, Kong, Adams and McHugh. (ECF No. 65 at 9.) But because plaintiff's request was improperly made in his reply, his request was denied without prejudice. (ECF No. 66 at 5.) Further, plaintiff objected that he was transferred back to the jail for further court proceedings, without his legal materials, which he alleged prevented him from propounding discovery. (ECF No. 66 at 7.) However, plaintiff said he arrived at the jail on April 13, 2017, but did not indicate how long he was at the jail. Therefore, the undersigned declined to further extend the discovery deadline in light of "the breadth of the discovery sought from the non-parties, including discovery as to claims unrelated to the instant retaliation claims." (ECF No. 66 at 7.) Rather, plaintiff was directed to file a motion to modify the scheduling order and demonstrate good cause under Rule 16(b)(4) if he believed additional discovery pertinent to his 2012 retaliation claims was needed. (ECF No. 66 at 7.) Despite such order, plaintiff did not do so. Rather, plaintiff waited seven months before again simply claiming defendants failed to provide all discovery. Thus, plaintiff's claims that defendants failed to provide discovery are untimely.

Second, plaintiff relies heavily on his status as a pro se litigant and claims he was denied sufficient law library and legal assistance. However, as a pro se litigant, plaintiff is still required to prosecute his case and to comply with the Federal Rules and court orders. Plaintiff was advised on at least two occasions what is required to oppose a motion for summary judgment.

(ECF Nos. 34 at 6; 72-1, both citing <u>Rand v. Rowland</u>, 154 F.3d 952, 957 (9th Cir. 1998).)
Further, plaintiff was granted an extension of time in which to file his opposition.  Plaintiff's
opposition reflects that he was aware of the standards governing retaliation claims, as well as
leading cases addressing such claims.  (ECF No. 76 at 20, citing, *inter alia*, <u>Rhodes v. Robinson</u>,
408 F.3d 559, 567 (9th Cir. 2004); <u>Pratt v. Rowland</u>, 65 F.3d 802, 806 (9th Cir. 1995);
<u>Valandingham v. Bojorquez</u>, 866 866 F.2d 1135, 1138 (9th Cir. 1989); <u>Bruce v. Ylst</u>, 351 F.3d
1283 (9th Cir. 2003.)  Moreover, retaliation claims are heavily fact-dependent, and plaintiff fails
to demonstrate how further legal research would enable him to adduce facts sufficient to rebut
defendants' motion for summary judgment.

   Third, plaintiff now claims that on January 29, 2018, all of his legal work contained in
electronic form was confiscated by DSH-C, "specifically reporters' transcripts on witnesses" for
his case 2:14-cv-2712 GEB DB P, as well as the instant case, and states this prevented plaintiff
from "producing Reporters Transcripts, Court Transcripts, Copies of Petitions, and "particularly
the Admissions Production of Documents of the Defendants' original statements on grievances."
(ECF No. 76 at 9.)  Later in his opposition, plaintiff states that DSH-C confiscated all of
plaintiff's "case law and exhibits on thumb drive."  (ECF No. 76 at 23.)  Plaintiff again states he
does not have "original defendants' forms.  They were submitted and most were scanned into the
thumb drive preventing the present contesting of summary judgment against defendants."  (<u>Id.</u>)

   It is clear that reporter's or court transcripts are not relevant in this case, but plaintiff's
shifting description of documents he does not have is unclear, particularly in light of his detailed
citations in his opposition (ECF No. 76 at 12, 18) and statement of undisputed facts (ECF No. 76-
1, *passim*), as well as his claim that defendants failed to provide defendants' original statements.
Plaintiff fails to demonstrate how the confiscation of the thumb drive prevented him from
rebutting the pending motion, and in particular prevented him from submitting a declaration
setting forth specific facts about each defendant's actions or inactions alleged throughout his
pleadings.

   Importantly, plaintiff's objection concerning the confiscation is untimely; plaintiff did not
raise such objection in his motion for extension of time filed April 26, 2018.  (ECF No. 74 at 1-4.)

In an exhibit to such request, plaintiff appended a copy of his April 21, 2018 "Office of Patients' Rights Complaint Form," which referenced the January 29, 2018 confiscation, but stated that the electronic devices contained "reporter's transcripts, motions and writs" which plaintiff had sent to this court. (ECF No. 74 at 6.) Nowhere in his request for extension of time does plaintiff allege that documents necessary to rebut summary judgment were included on the thumb drive. Also, plaintiff fails to explain why he did not seek court assistance immediately following the confiscation if the electronic data was necessary for this case.

Finally, plaintiff continues to argue facts that are not relevant to the incidents remaining at issue, or that involve individuals not named or remaining as defendants in this action. This action was filed on September 9, 2011; his original complaint named defendants at three different correctional facilities based on unrelated allegations. Subsequent amended pleadings suffered similar deficiencies. (See ECF Nos. 7 at 3-7; 18 at 2-3.) Plaintiff has been informed on numerous occasions that he cannot pursue unrelated allegations in his filings, and on November 1, 2017, he was warned that if he continued to do so, he would be subject to sanctions, including the imposition of monetary sanctions or terminating sanctions. (ECF No. 66 at 7.) Indeed, plaintiff was informed that

> this court has made it abundantly clear that this action proceeds solely on his retaliation claims against defendants Surjick, Kong, Adams, McHugh and Savage, based on the incidents that occurred in 2012. Thus, plaintiff should confine his future arguments to such 2012 retaliation claims.

(ECF No. 66 at 7.) In his opposition, supporting declaration, and statement of undisputed facts, plaintiff continues to refer to unrelated claims and individuals who are not named as defendants herein.

Therefore, while the court is sympathetic to the challenges plaintiff faces as an incarcerated litigant proceeding without benefit of counsel, for all of the above reasons, the undersigned declines to reopen discovery, or order that defendants' motion be postponed or deferred. Fed. R. Civ. P. 56(d), (e).

////

////

6

IV. Defendants' Motion for Summary Judgment

Defendants move for summary judgment on the grounds that plaintiff adduced no evidence to rebut defendants' evidence that none of them retaliated against plaintiff for filing grievances while housed at the San Joaquin County Jail. Plaintiff filed an opposition; defendants filed a reply.[3]

A. General Legal Standards

1. Legal Standards for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)). "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary

---

[3] On June 25, 2018, plaintiff filed a document styled "Second Reply to Defendants' Request for Summary Judgment." (ECF No. 79.) Because defendants' motion was fully briefed under Local Rule 230(l), plaintiff's "second reply" is a surreply to defendants' reply. The Local Rules do not authorize the routine filing of a surreply. Nevertheless, when a party has raised new arguments or presented new evidence in a reply to an opposition, the court may permit the other party to counter the new arguments or evidence. El Pollo Loco v. Hashim, 316 F.3d 1032, 1040-41 (9th Cir. 2003). Here, defendants' reply addressed the arguments in plaintiff's opposition; it raised no new theories. Moreover, plaintiff did not seek leave to file a surreply, and his arguments therein do not impact the court's analysis. For these reasons, plaintiff's surreply is stricken.

judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

Civ. P. 56(c). The evidence of the opposing party is to be believed. See Liberty Lobby, Inc., 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on March 30, 2018 (ECF No. 72), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

## 2. Civil Rights Act

The Civil Rights Act provides a cause of action against any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). "In a § 1983 action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury. To meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation." Harper v. City of L.A., 533 F.3d 1010, 1026 (9th Cir. 2008) (internal citations omitted). Proximate cause requires "'some direct relation between the injury asserted and the injurious conduct alleged.'" Hemi Group, LLC v. City of New York, 559 U.S. 1, 9-10, 12 (2010) (quoting Holmes v. Secs. Investor Prot. Corp., 503 U.S. 258, 268 (1992)).

B. Undisputed Facts ("UDF")[4]

1.  The San Joaquin County Jail's ("Jail") grievance claim process allows an inmate to file a grievance for a number of reasons related to his or her confinement at the Jail.

2.  The grievance process uses a grievance form.

3.  The grievance process has four levels.

4.  The four levels of the grievance process are as follows:  Level 1: grievance form submitted to complained-officer for possible resolution; Level 2: grievance form submitted to Correctional Sergeant (Area Supervisor); Level 3: grievance form submitted to Correctional Lieutenant; Level 4: grievance form submitted to Correctional Captain (final level).

5.  A separate grievance form is required to proceed through each level, if necessary.

6.  During the time of plaintiff's incarceration at the jail, December 21, 2010 through January 7, 2014, he filed numerous grievances, at least 22 in number, as reflected in the attachments to his Third Amendment Complaint in "Plaintiff's Response to Production of Documents."  The lone remaining causes of action are on claims of retaliation (related to the filing of grievances) against Defendants Surjick, Kong, McHugh and Adams for actions in February of 2012, and Defendant Savage for actions in September of 2012.

7.  Jamiyl Surjick (hereinafter "Surjick") is a Correctional Officer at the San Joaquin County Jail (hereinafter "Jail").

8.  Surjick was working at the Jail on February 5, 2012.

9.  Plaintiff did not ask Surjick to file a grievance form on February 5, 2012.  (ECF No. 71-8 at 1.)

////

---

[4]  For purposes of the pending motion, the following facts are found undisputed, unless otherwise indicated.  On June 4, 2018, plaintiff filed a statement of uncontroverted facts which includes statements concerning incidents unrelated to those remaining at issue here, including claims previously dismissed.  (ECF No. 76-1.)  Whether or not such unrelated facts are undisputed, they are not addressed or included here because they are not relevant to plaintiff's remaining retaliation claims at issue in this action.

10. If plaintiff had asked for Surjick to file a grievance form, he would have done so. (Id. at 2.)

11. Surjick has never taken any action against plaintiff in retaliation for him filing any grievance(s) during the time he was at the Jail. (Id.)

12. Akoura Kong (hereinafter "Kong") is a Correctional Officer at the San Joaquin County Jail (hereinafter "Jail").

13. Kong was working at the Jail on February 9, 2012.

14. While Kong was by plaintiff's cell door, plaintiff asked Kong for a grievance form. (ECF No. 71-5 at 1.)

15. Kong scanned the grievance form and, as was his usual process, then discussed the matter with Correctional Officer Sean Adams (hereinafter "Adams"). (ECF No. 71-5 at 2.)

16. Kong believed that Adams would attempt to resolve the matter informally with plaintiff, and if not resolved, Adams would then provide plaintiff with a grievance form to have the matter go up to the next step of the grievance process. (Id.)

17. Kong never denied plaintiff a grievance form in retaliation for his filing of any grievance(s). (Id.)

18. Margo McHugh (hereinafter "McHugh") is a Correctional Officer at the San Joaquin County Jail (hereinafter "Jail").

19. McHugh was working at the Jail on February 10, 2012.

20. McHugh vaguely recalls, while near plaintiff's cell door, discussing his grievance against Correctional Officer Sean Adams.

21. Plaintiff did not ask for a grievance form. (ECF No. 71-6 at 1-2.)

22. If plaintiff had asked for a grievance form, McHugh would have provided him with one. (Id. at 2.)

23. McHugh never took any action against plaintiff in retaliation for his filing of any grievance(s) during the time he was at the Jail. (Id.)

24. Sean Adams (hereinafter "Adams") is a Correctional Officer at the San Joaquin County Jail (hereinafter "Jail").

25. Adams was working at the Jail on February 9, 2012.

26. Adams was working at the Jail on February 10, 2012.

27. Adams recalls at least one instance during one of those days in February wherein another correctional officer discussed with him, the grievance plaintiff had filed against him relating to the opening and delivery of legal mail. (ECF No. 71-4 at 1-2.)

28. Adams was not asked by a correctional officer or by plaintiff to provide plaintiff with a grievance form. (Id.)

29. Adams did not dissuade any correctional officer or other person from providing a grievance form to plaintiff. (Id.)

30. Adams never denied plaintiff a grievance form in retaliation for his filing of any grievance(s). (Id. at 2.)

31. Aaron Savage (hereinafter "Savage") is a Correctional Officer at the San Joaquin County Jail (hereinafter "Jail").

32. Savage read plaintiff's third amended complaint as it relates to plaintiff's retaliation allegation against him.

33. Savage denies he called plaintiff "a fucken child molester." (ECF No. 71-7 at 1.) In his declaration, plaintiff declares that on September 10, 2012, after plaintiff asked Savage for his partner's name, defendant Savage stated he was not going to help plaintiff with his lawsuit, and as he walked away from plaintiff's cell, Savage yelled, "you fucking child molester," facing Cell 34 and the ad/seg population. (ECF No. 27 at 93.) Plaintiff requested a grievance, but Savage never brought one. (Id.) In addition, plaintiff submitted the declaration of inmate Villanueva, #1214861, in support of plaintiff's claims against defendant Savage. (ECF No. 27 at 88.)

34. At all times relevant herein, plaintiff was detained and housed at the San Joaquin County Jail.

35. The grievance forms confirm that plaintiff filed his grievances against defendants Surjick and Kong through the third level of review. (ECF No. 27 at 77, 80.)

36. With his third amended complaint, plaintiff recounts the grievances he filed (¶¶ 24, 26, 29, 31, 33, 35, 39, 42, 46, 54, 58, 64), and he provided copies of 21 grievances he filed at the

12

San Joaquin County Jail.  (ECF No. 27 at 35 (January 14, 2011), 37 (May 25, 2011); 38 (February 12, 2011); 39 (September 21, 2011), 41 (May 30, 2011); 42 (May 26, 2011); 46 (March 26, 2011); 50 (February 10, 2011); 52 (November 6, 2011); 66 (March 14, 2012); 67 (February 18, 2012); 68 (February 8, 2012); 69 (January 25, 2012); 75 (February 18, 2012); 76 (February 24, 2012); 77 (March 5, 2012); 78 (February 18, 2012); 79 (February 24, 2012); 80 (March 5, 2012); 81 (February 24, 2012); 82 (March 5, 2012).)

37.  In response to defendants' request for production of documents no. 1, plaintiff admitted submitting the following additional grievances dated:  January 9, 2010; February 17, 2011; March 26, 2011; June 30, 2011; September 7, 2011; January 16, 2012; August 22, 2012; November 2, 2012.  (ECF No. 71-3 at 11-13.)  Plaintiff also admitted filing appeals of responses, which are also filed on the jail's grievance form, on these dates:  May 25, 2011; May 26, 2011; May 30, 2011; September 25, 2011; October 21, 2011; January 18, 2012; February 8, 2012; February 18, 2012; February 24, 2012; March 5, 2012 (two); March 14, 2012; November 2, 2012, November 14, 2012, December 11, 2012, and December 16, 2012.  (ECF No. 71-3 at 15-17.)

38.  The grievance forms confirm that plaintiff filed his grievances against Surjick and Kong through the third level of review.  (ECF No. 27 at 77, 80.)  At the third level, plaintiff's grievances were forwarded to Lt. Teague on March 5, 2012.  (Id.)

39.  Plaintiff was transferred to DSH-C on January 7, 2014.  (ECF No. 76 at 5.)

C.  Retaliation Claims

As set forth above, plaintiff pursues multiple claims of retaliation against defendants.  The court will first set forth the legal standards governing retaliation claims, and will then address plaintiff's claims.

1.  Legal Standards Governing Retaliation Claims

It is well established that "[p]risoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so."  Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012).  "Within the prison context, a viable claim of retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

13

exercise of his First Amendment or other rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote and citations omitted). To prove the second element, retaliatory motive, plaintiff must show that his protected activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct. Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989)). Plaintiff must provide direct or circumstantial evidence of a defendant's alleged retaliatory motive; mere speculation is not sufficient. See McCollum v. Cal. Dep't of Corr. and Rehab., 647 F.3d 870, 882-83 (9th Cir. 2011); accord Wood v. Yordy, 753 F.3d 899, 905 (9th Cir. 2014). In addition to demonstrating defendant's knowledge of plaintiff's protected conduct, circumstantial evidence of motive may include: (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual. McCollum, 647 F.3d at 882 (quoting Allen v. Iranon, 283 F.3d 1070, 1077 (9th Cir. 2002)).

Retaliation claims brought by prisoners must be evaluated in light of concerns over "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'" Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995) (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)). In particular, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Id. (quoting Sandin, 515 U.S. at 482).

### 2. Claims re Incidents in February of 2012

Plaintiff fails to submit competent evidence to support his claims that defendants Surjick, Kong, Adams, and McHugh retaliated against plaintiff by failing to provide or file a grievance form in February of 2012, as discussed below.

First, none of the declarations appended to plaintiff's third amended complaint[5] address

---

[5] Plaintiff's 115-page third amended complaint consists of his 22-page typewritten pleading, and 93 pages of exhibits, exhibit index, and proof of service. (ECF No. 27.) The complaint is not

the incidents in February of 2012.  (ECF No. 27 at 36 (Hintze), 70 (Wood), 71 (Haliburton), 72-74 (A.A.), 88 (Villanueva), 93-95 (plaintiff).)

Second, in his recent declaration, plaintiff declares that "the evidence is found in the . . . duration of never receiving another grievance even after notifying Lt. Simmons, the Captain, and the Sheriff by fax," and that he "could not get another grievance after March 5, 2012," "was systematically denied all grievance by the design of defendants at different times, but different acts," and "[a]ll plaintiff's appeals stopped and he could not file on deputies from January 24, 2012 through January 7, 2014."  (ECF No. 76 at 25; 27.)  However, such statements are belied by the record.  Plaintiff provided a copy of grievances dated January 25, 2012, February 8, 2012, February 18, 2012, February 24, 2012, March 5, 2012, March 14, 2012.  (UDF 37.)  Plaintiff's discovery response confirmed he also filed grievances on August 22, 2012, and November 2, 2012, and filed grievances expressing dissatisfaction with grievance responses on February 8, 2012, February 18, 2012, February 24, 2012, March 5, 2012 (two), March 14, 2012, November 2, 2012, November 14, 2012, December 11, 2012, and December 16, 2012.  (UDF 38; see also UDF 4-5.)  No rational juror would find that plaintiff suffered adverse action where the record demonstrates that plaintiff was able to obtain grievance forms following the alleged February 2012 incidents.

Third, in his recent declaration, plaintiff fails to set forth specific acts taken or not taken by each of these defendants in February of 2012.  Rather, plaintiff makes generalized statements claiming that "defendants admit to collusion in speaking to each other; admit to authenticating of Sheriff [sic] form; [they] were working; but they did not sign, answer, nor were asked for a form by plaintiff."  (ECF No. 76 at 25.)  Plaintiff avers that he would prove such collusion by:

- comparing defendant Adams' current handwriting to writings dated January 24, 2012, and February 8, 2012, citing paragraphs 55-57 of his pleading "fraud on the court";

- "show the jury Deputy Adams read case Arceo v. Salinas, inferring he told [defendants]

signed under penalty of perjury.  (ECF No. 27 at 22.)  Rather, in paragraph 126, plaintiff types: "I declare under the penalty of perjury that I am the plaintiff herein; I have read the foregoing and believe them to be true of my own knowledge except as to those matters herein based on information and belief.  I believe them to be true."  (ECF No. 27 at 21.)

Kong and McHugh to refuse grievance.  lied or forgot; Officer's Scheme;"

- on January 24, 2012, plaintiff showed defendant Adams court case citations; "when requested Sergeant; then grievance, but ultimately denied,"

- because Adams worked after the grievance was processed, Adams was "fully able to cover-up original statement," or "confederate to help Deputies or Sheriffs."

(ECF No. 76 at 25-26.)  Further, plaintiff declares that defendants Adams, Kong, and McHugh "have appeared to participate in Deputy code of silence."  (ECF No. 76 at 26.)

However, plaintiff fails to submit competent evidence supporting such bold statements. Plaintiff argues the timing of defendants' actions or inactions demonstrate retaliation, but he fails to set forth specific facts in his declaration from which such causal connection could be demonstrated or inferred.  Plaintiff's conclusory statements are insufficient to defeat defendants' properly supported motion for summary judgment.  See Liberty Lobby, Inc., 477 U.S. at 256 ("a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial"); Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1061 (9th Cir. 2011) ("To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations.").

Importantly, in his declaration, plaintiff fails to rebut the specific facts contained in the declarations of each defendant involved in the February 2012 incidents.  Plaintiff adduces no evidence that he was present during the conversations such defendants had with each other, and he presents no competent evidence from an inmate or other witness to such conversations.  Thus, plaintiff fails to demonstrate that defendant Adams dissuaded defendants Kong or McHugh from giving plaintiff a grievance form on February 9 or 10, 2012, or instructed defendant Surjick not to file plaintiff's grievance.  Moreover, even assuming defendant Surjick did not file plaintiff's grievance, plaintiff failed to submit competent evidence that he asked Surjick to do so.  Even assuming that defendants Adams and McHugh failed to give plaintiff a grievance form, plaintiff failed to adduce competent evidence that he asked such defendants for a grievance form.  Also, plaintiff fails to rebut defendant Kong's declaration that she discussed plaintiff's grievance with

16

defendant Adams, or that Kong believed Adams would discuss the matter with plaintiff and provide a grievance form if the complaint could not be resolved.

In addition, plaintiff fails to adduce evidence that defendants Surjick, Kong, and McHugh were aware of plaintiff's January 24, 2012 grievance against defendant Adams, or that their actions or inactions were based on plaintiff's protected conduct. Although plaintiff declares he would show the jury that defendant Adams had read plaintiff's case, <u>Arceo v. Salinas</u>, plaintiff failed to submit such evidence here. Plaintiff submitted no evidence from which a rational juror could infer that the alleged failure to file or provide a grievance form in February of 2012, was done in retaliation for plaintiff's protected conduct.

Further, there is a legitimate penological purpose in officers attempting to resolve administrative grievances at an informal level. The fact that defendants Kong and McHugh discussed plaintiff's grievances with defendant Adams, standing alone, does not constitute collusion or retaliation. Importantly, as discussed above, plaintiff's declaration that he was thereafter unable to obtain a grievance form is belied by the evidence.

For all of the above reasons, the undersigned recommends that defendants Surjick, Kong, Adams, and McHugh be granted summary judgment because plaintiff identifies no genuine issue of material fact as to whether any of these defendants failed to provide or file a grievance form because of plaintiff's protected conduct. <u>See</u> <u>Watison</u>, 668 F.3d at 1114 ("[T]he plaintiff must allege a causal connection between the adverse action and the protected conduct.")

### 3. Claim re Defendant Savage

On the other hand, there is a triable issue of material fact precluding summary judgment on behalf of defendant Savage. Although defendant Savage denies he called plaintiff a "fucken child molester," plaintiff submits his own declaration stating that Savage did so. (ECF No. 27 at 93.) Moreover, plaintiff submitted the declaration of inmate Villanueva, #1214861, in support. Although inmate Villanueva does not confirm the molester comment, Villanueva overheard defendant Savage make several comments about "Lefty's" lawsuit, and stated that Savage called

////

////

17

"Lefty" out with his name with bad word[s] more than a few times." (ECF No. 27 at 88.)[6] Thus, there is a triable issue of material fact as to whether defendant Savage took adverse action against plaintiff by calling him a child molester in front of other jail inmates in retaliation for plaintiff's threat to file a lawsuit against Savage and his partner. See Entler v. Gregoire, 872 F.3d 1031, 1042-43 (9th Cir. 2017) (prison officials may not punish a prisoner for threatening to sue). Taking plaintiff's declaration as true, there is no legitimate correctional purpose or goal in calling an inmate a child molester, an inflammatory label plaintiff alleges was used to incite violence against him, in front of other jail inmates. Defendant Savage is not entitled to summary judgment.

### 2. Conclusion

For all of the above reasons, defendants Surjick, Kong, Adams and McHugh are entitled to summary judgment; defendant Savage's motion for summary judgment should be denied.

## IV. Plaintiff's Motion for Handwriting Expert

Following briefing on defendants' motion for summary judgment, plaintiff filed a motion for handwriting expert. (ECF No. 78.) Plaintiff contends that defendants failed to sign, date and admit their grievance responses to grievances directed to them, and appears to argue that defendant Adams' alleged failure to acknowledge authorship of certain grievances constitutes fraud.

### Governing Standards

Federal Rule of Evidence 706 provides "the court may order the parties to show cause why expert witnesses should not be appointed and may ask the parties to submit nominations. The court may appoint any expert that the parties agree on and any of its own choosing." Fed. R. Evid. 706(a). However, under Rule 706, court-appointed experts are properly appointed in the court's discretion to assist the trier of fact in evaluating contradictory or complex evidence. See Walker v. Am. Home Shield Long Term Disability Plan, 180 F.3d 1065, 1071 (9th Cir. 1999)

---

[6] Plaintiff only has one arm. (ECF No. 76 at 9.) Inmate Villanueva does not identify plaintiff by name, but Villanueva provides sufficient facts to raise an inference that his use of "Lefty" is a nickname for plaintiff, and inmate Villanueva can clarify the term at trial.

(appointing a physician expert witness where medical testimony on record was "not particularly clear"); <u>Woodroffe v. Oregon</u>, 2014 WL 1383400, at *5 (D. Or. April 8, 2014) ("This Rule permits a court to appoint a neutral expert to assist the court to understand complex, technical, or esoteric subject matter."); <u>In re Joint E. & S. Districts Asbestos Litig.</u>, 830 F. Supp. 686, 693 (E.D. N.Y. 1993) (noting that court appointment of experts is appropriate only in "rare circumstances" and should be reserved for "exceptional cases" in which the ordinary adversarial process does not suffice, such as complex mass tort problems.); <u>McKinney v. Anderson</u>, 924 F.2d 1500, 1510-11 (9th Cir. 1991) (noting court's discretion to appoint expert in case involving complex scientific issues concerning effects of secondary cigarette smoke), <u>vacated on other grounds</u>, <u>Helling v. McKinney</u>, 502 U.S. 903 (1991). Courts do not invoke Rule 706 simply to "appoint an expert on behalf of an indigent civil party." <u>Woodroffe</u>, 2014 WL 1383400, at *5; <u>see also</u> <u>Gorton v. Todd</u>, 793 F. Supp. 2d 1171, 1178 n.6 (E.D. Cal. 2011) ("all parties agree[d]" Rule 706 did not permit the appointment of a neutral expert witness solely for an indigent prisoners' "own benefit" in aiming to prove deliberate indifference.); <u>Tedder v. Odel</u>, 890 F.2d 210, 211 (9th Cir. 1989); <u>United States v. MacCollom</u>, 426 U.S. 317, 321 (1976).

<u>Discussion</u>

Initially, to the extent plaintiff contends discovery responses by defendants were insufficient, or argues that defendants failed to produce certain discovery, such arguments are untimely as discussed above.

Second, to the extent plaintiff seeks such expert testimony to rebut defendants' testimony, Rule 706 does not contemplate court appointment and compensation of an expert witness as an advocate for plaintiff, but only permits appointment of neutral expert witnesses. Fed. R. Evid. 706(a); <u>see also</u> <u>Belanus v. Dutton</u>, 2017 WL 4518604, at *1 (D. Mont. Oct. 10, 2017) (appointment of expert not appropriate where sought to support party's own arguments); <u>Gorrell v. Sneath</u>, 2013 WL 3357646, * 1 (E.D. Cal. Jul. 3, 2013) (purpose of court-appointed expert is to assist the trier of fact, not to serve as an advocate for a particular party); <u>Manriquez v. Huchins</u>, 2012 WL 5880431, *14 (E.D. Cal. 2012) (same).

////

Finally, plaintiff fails to demonstrate that his case is of such complexity that the judicial appointment of a handwriting expert is necessary. See Skylstad v. Reynolds, 248 F. App'x 808, 810 (9th Cir. 2007) (in prisoner's civil rights action for medical malpractice, retaliation, excessive force, deliberate indifference to medical needs, unlawful search and seizure, and due process violations, the district court did not error in declining to appoint experts to assist prisoner because action did not involve complex scientific evidence of complex issues); Neal v. Campbell, 459 F. App'x 656, 658 (9th Cir. 2011) (Neal's civil rights action alleging First Amendment free exercise and retaliation claims "did not involve complex issues or evidence.").

Here, plaintiff pursues retaliation claims against defendants Surjick, Adams, Kong, McHugh, and Savage. The incidents at issue are narrowly-tailored in time, the facts alleged are not complex, and the subject matter or evidence is not difficult to understand. Moreover, plaintiff has failed to demonstrate that a handwriting expert is necessary or would be useful to assist the trier of fact to understand a material issue in this case. Plaintiff fails to show that even if defendant Adams authored certain grievance decisions, such evidence would demonstrate Adams took adverse action against plaintiff in February of 2012 in retaliation for plaintiff's January 24, 2012 grievance filed against Adams.

Based on the record set forth above the court cannot find that a handwriting expert would assist the trier of fact in resolving plaintiff's First Amendment retaliation claims. Plaintiff's motion for handwriting expert is denied.

V. Conclusion

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's unauthorized surreply (ECF No. 79) is stricken;

2. The undersigned declines to postpone or defer ruling on defendants' motion under Rule 56(d) or (e) of the Federal Rules of Civil Procedure; and

3. Plaintiff's motion for the appointment of a handwriting expert (ECF No. 78) is denied; and

IT IS RECOMMENDED that defendants' motion for summary judgment (ECF No. 71) be granted in part and denied in part, as follows:

1.  Defendant Savage's motion for summary judgment be denied;

2.  The remaining defendants Surjick, Kong, Adams and McHugh be granted summary judgment; and

3.  This action be remanded to the undersigned for further scheduling.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 29, 2019

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/arce1196.msj.retal

21